RACHEL E. KAUFMAN (CAL BAR NO. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FRANK WALWORTH**, individually on behalf of all others similarly situated, | Case no. |
| Plaintiffs, | |
| v. | **CLASS ACTION** |
| **RUBIO REAL ESTATE SERVICES, INC.,** a California corporation (Brokerage) | **JURY DEMAND** |
| Defendant. | |

This case addresses a disturbing trend whereby real estate brokerages direct their real estate agents to cold call consumers without consent violating the Telephone Consumer Protection Act.  Plaintiff Frank Walworth ("Plaintiff Walworth" or "Walworth") brings this Class Action Complaint and Demand for Jury Trial against Defendant Rubio Real Estate Services ("Defendant" or "Rubio Real Estate Services") to stop Rubio Real Estate Services from violating the Telephone Consumer Protection Act ("TCPA") by directing their real estate agents to leave pre-recorded voice message calls to consumers without the consumers'

prior written consent. As a result, Plaintiff seeks to obtain injunctive and monetary relief for all persons injured by Rubio Real Estate Services' telemarketing practices. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1.      Plaintiff Frank Walworth is a resident of Ontario, California.

2.      Defendant Rubio Real Estate Services is a real estate brokerage located in Fullerton, California. Defendant conducts business throughout this District.

**JURISDICTION AND VENUE**

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. § 227.

4.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is incorporated in California and headquartered in this District, and because the wrongful conduct giving rise to this case was directed from and to this District. In addition, Plaintiff resides in this District.

# TCPA BACKGROUND

5.    As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." Barr v. Am. Ass'n of Political Consultants, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).  By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

7.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

8.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

9.      According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

10.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

11.      According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12.      While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having

received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

13.    "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

14.    Encouraging people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

15.    In recent years a troubling trend has surfaced in the real estate industry whereby real estate companies such as Defendant are purchasing lists of consumer phone numbers and soliciting them by calling them without any prior written consent.

16.    This trend has resulted in consumers being bombarded by unsolicited real estate solicitation calls and text messages without their consent in violation of the TCPA.

## COMMON ALLEGATIONS

17.     Defendant Rubio Real Estate Services is a real estate brokerage company.[1]

18.     The broker for Rubio Real Estate Services is Christopher Rubio, who also works as a real estate agent for the company.[2]

19.     Christopher Rubio in his capacity as agent for Defendant Rubio Real Estate Services places unsolicited calls to consumers using a pre-recorded voice message without obtaining the necessary express prior written consent to place such calls.

20.     On Defendant Rubio Real Estate Services' Yelp page, a consumer posted the following complaint:



**Dana L.**
Covina, CA
0 friends
14 reviews

 1/2/2020

Why is this guy "Christopher" calling me and leaving robo messages?? No option to opt out of them and he has left three messages wanting me to hire him?  I HATE these calls and being disturbed and would not use them for that reason alone.                                [3]

21.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all … prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer*

---

[1] https://www.linkedin.com/company/rubio-real-estate-services/about/
[2] https://www.linkedin.com/in/chrisrubio/
[3] https://www.yelp.com/biz/rubio-real-estate-services-fullerton

*Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

22.    Yet in violation of this rule, Defendant fails to obtain any express written consent prior to placing pre-recorded calls to cellular telephone numbers such as Plaintiff's.

## PLAINTIFF'S ALLEGATIONS

23.    On May 12, 2020 at 11:02 AM, Plaintiff Walworth received a call from Defendant's agent Christopher Rubio from the phone number 714-970-4307.

24.    Plaintiff receive a pre-recorded voicemail from Christopher Rubio stating:

"Realtor in the area and was recently featured on. Hi, this is Christopher Rubio, 5-star realtor in the area and was recently featured on (unintelligible)…"

25.    The purpose of the call was to solicit Plaintiff to use Defendant's real estate services.

26.    Frustrated by this call, Plaintiff called 714-970-4307 to confirm who had called him.

27.    When Plaintiff called 714-970-4307, Christopher Rubio answered.

28.    Rubio identified himself and repeated what was stated in the voicemail, which is that Rubio is a 5-star real estate agent who was featured in a reality television show.

29.    Plaintiff never consented to receiving a pre-recorded voice message call from Defendant.

30.    Plaintiff is the trustee for his late mother's property, which he had listed with a real estate agent with a different company.

31.    Plaintiff re-listed his property with the same agent it was listed with before, but despite this fact, he was flooded with unsolicited real estate telemarketing calls when the listing initially expired, including the pre-recorded call from Rubio Real Estate Services.

32.    The unauthorized telephone call made by Defendant, as alleged herein, has harmed Plaintiff Walworth in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

33.    Seeking redress for these injuries, Plaintiff Walworth, on behalf of himself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited pre-recorded voice message calls to cellular telephones.

# CLASS ALLEGATIONS

34.    Plaintiff Walworth brings this action pursuant to Federal Rules of

Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following

Class:

> **<u>Pre-recorded Class</u>**: All persons in the United States who from four years
> prior to the filing of this action through class certification Christopher Rubio
> called using a pre-recorded voice message.

35.    The following individuals are excluded from the Class: (1) any Judge

or Magistrate presiding over this action and members of their families; (2)

Defendant, its subsidiaries, parents, successors, predecessors, and any entity in

which Defendant or its parents have a controlling interest and their current or

former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who

properly execute and file a timely request for exclusion from the Class; (5) the

legal representatives, successors or assigns of any such excluded persons; and (6)

persons whose claims against Defendant have been fully and finally adjudicated

and/or released. Plaintiff Walworth anticipates the need to amend the Class

definitions following appropriate discovery.

36.    **Numerosity**: On information and belief, there are hundreds, if not

thousands of members of the Class such that joinder of all members is

impracticable.

37.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Walworth and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)     whether Defendant's agent Christopher Rubio utilized a pre-recorded voice message system to place phone calls to Plaintiff and the members of the Class;

(b)     whether Rubio's conduct constitutes a violation of the TCPA;

(c)     whether Defendant is vicariously liable for Rubio's conduct;

(d)     whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

38.     **Adequate Representation**: Plaintiff Walworth will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Walworth has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Walworth and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Walworth nor his counsel have any interests adverse to the Class.

39.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Walworth and the Pre-recorded Class)

40.    Plaintiff Walworth repeats and realleges paragraphs 1 through 39 of this Complaint and incorporates them by reference.

---

41.     Defendant's agent made pre-recorded, solicitation calls to Plaintiff and the other members of the Class using a pre-recorded voice message.

42.     These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Class.

43.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Walworth, individually and on behalf of the Class, prays for the following relief:

44.     An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Walworth as the representative of the Class; and appointing his attorneys as Class Counsel;

45.     An award of actual and/or statutory damages and costs;

46.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

47.     An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

48.     Such further and other relief as the Court deems just and proper.

CLASS ACTION COMPLAINT
-12-

## JURY DEMAND

Plaintiff Walworth requests a jury trial.

Dated: August 11, 2020                    Respectfully submitted,

                                          By: /s/ *Rachel E. Kaufman*
                                          Rachel E. Kaufman (Cal Bar no. 259353)
                                          rachel@kaufmanpa.com
                                          KAUFMAN P.A.
                                          400 NW 26th Street
                                          Miami, FL 33127
                                          Telephone: (305) 469-5881

                                          *Attorney for Plaintiff and the Class*

CLASS ACTION COMPLAINT
-13-